IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EDGAR EDUARDO CADILLO SALAZAR,<br><br>      Petitioner,<br><br>vs.<br><br>KRISTI NOEM, Secretary, Department of Homeland Security, et al.,<br><br>      Respondents. | 4:26-CV-3045<br><br>MEMORANDUM AND ORDER |

  The petitioner seeks immediate release from Immigration and Customs Enforcement custody in the McCook Detention Center in McCook, Nebraska, claiming that this Court erred earlier this month when it conditionally granted his previous petition for writ of habeas corpus in case no. 8:26-CV-44 (hereinafter, the "First Case").[1] The Court will deny this new petition.

## BACKGROUND

  The petitioner was born in Peru and entered the United States near Lukeville, Arizona in 2024. Filing 1 at 1; filing 1-1 at 12. He was detained shortly thereafter, released on recognizance, issued a notice to appear, and

---

[1] Filing a new petition to collaterally attack a judgment conditionally granting a previous petition is, to say the least, unconventional. In order to expeditiously resolve the issues presented on their merits, the Court has set aside any procedural concerns that may be presented by the existence of the prior judgment. *See* 28 U.S.C. § 2243 (court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto").

placed in removal proceedings. Filing 1 at 2; filing 1-1 at 2-3. The date for the petitioner's notice to appear was May 19, 2025. Filing 1-1 at 8, 11.

The petitioner applied for asylum and withholding of removal in January 2025. Filing 1-1 at 12-23. His written pleadings were served on March 19, 2025. Filing 101 at 25-28. But an immigration judge issued a finding of removability on April 23, 2025. Filing 1-1 at 29-32. The petitioner was ordered to file an application for relief, in anticipation of a possible merits hearing, within 60 days. Filing 1-1 at 29-32. The hearing scheduled for May 19 was apparently vacated and not rescheduled. *See* filing 1-1 at 44.

The petitioner, evidently still on release, was detained in Minnesota on January 3, 2026. First Case Filing 7 at 4. An administrative warrant for his arrest was served, although the record isn't clear whether the warrant was issued before or after his detention. *See* First Case Filings 7 and 7-1. The petitioner was transferred the next day to the Cass County Jail in Plattsmouth, Nebraska, and from there to the McCook Detention Center. First Case Filing 7. He requested a bond hearing, and the immigration judge determined that one should be held, but one wasn't scheduled. Filing 1 at 2; filing 1-1 at 34

The petitioner filed his petition in the First Case on January 30, 2026. First Case Filing 1. In that case, he alleged that he should be released because 8 U.S.C. § 1226(a) requires discretion to be exercised in determining whether a non-citizen should be detained or released. First Case Filing 1 at 4-5, 9. On that premise, he asserted five substantially overlapping claims:

I.   ICE violated his due process rights by not following its own regulations and exercising its discretion to determine whether he was dangerous or a flight risk,

II.  ICE violated his due process rights by not engaging in a custody redetermination procedure in immigration court when redetaining him,

2

> III. ICE violated its own regulations by denying him a bond hearing,
>
> IV. Re-detention for an alien who is not dangerous or a flight risk violates the Due Process Clause, and
>
> V. The Due Process Clause requires a hearing before an immigration judge before an alien can be re-detained.

First Case Filing 1 at 9-11. Accordingly, the petitioner prayed that the Court "[i]ssue a writ of habeas corpus requiring that Respondents release prisoner or set a bond hearing." First Case Filing 1 at 11.

The Court did precisely that: It issued a conditional writ of habeas corpus ordering the government to either release the petitioner or provide him with a bond hearing. First Case Filing 8. Specifically, the Court ordered the government to "provide the petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations on or before February 9, 2026, or else the petitioner must be immediately released from detention." First Case Filing 9. The government provided the petitioner with a bond hearing on February 4 and denied the petitioner release on bond. First Case Filing 10; *see also* filing 1-1 at 42-46.

Specifically, the immigration judge denied the petitioner release after considering the factors set forth in *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), which are:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the

3

seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

The immigration judge acknowledged that the petitioner has a fixed address in the United States, has family ties in the United States, was employed, had no known criminal history, and had not attempted to flee prosecution or evade authorities. Filing 1-1 at 44-45. But, the immigration judge noted, the petitioner entered the United States less than two years ago; none of his family members presented him with a pathway to permanent immigration status; he had not previously been required to appear in court; and he had violated immigration law by entering the United States illegally, having little chance of succeeding on his asylum claim, having not sought asylum in Mexico despite having crossed through it on his way from Peru, and having not pursued a legal method of entering the country. *Id*. On balance, the immigration judge concluded, the petitioner hadn't shown he was "not a flight risk – especially given his brief amount of time in the United States, his lack of immediate family members with legal status, and his limited forms of relief." *Id*. at 45.

The petitioner then filed this new petition for a writ of habeas corpus, collaterally attacking both this Court's prior judgment and the immigration judge's decision to deny bond. Filing 1.

## DISCUSSION

There are two primary thrusts to the petitioner's operative petition: First, that the petitioner's redetention should have resulted in his immediate release, not a bond hearing; and second, that the bond hearing the petitioner received denied him due process.

4

IMMEDIATE RELEASE

First, the petitioner mounts what is essentially a collateral attack on the Court's first decision granting him a bond hearing. Filing 1 at 5-6. The petitioner points to other cases in which the undersigned[2] has ordered immediate release for people who weren't detained pursuant to a preexisting administrative warrant, or whose previous release hadn't been formally revoked before their redetention.

The Court has ordered immediate release under similar circumstances, but not identical. The problem for the Court is a prudential one. This is not the first case in which the Court has seen an administrative warrant dated the same day as detention, without a clear sequence of events. But the Court has generally elected to order a bond hearing where the record provides no reason to believe that the administrative warrant is invalid, regardless of when it was issued. There would be little point in ordering the immediate release of a petitioner who could instantly be lawfully redetained on an extant warrant. In that situation, the Court has generally concluded that ordering a bond hearing is the best way to ensure that the petitioner ends up in a better position than when they first came to court. *See, e.g.*, *Garza Zacarias v. Bondi*, No. 26-CV-1259 (D. Minn. Feb. 10, 2026). And the Court has tried to resolve these cases expeditiously, for reasons that are obvious when unlawful detention is alleged.

The Court has exercised its discretion to order immediate release under some circumstances. For instance, the Court has ordered immediate release where the record may have suggested, but didn't prove, the existence of a pending administrative warrant. *E.g. Velasco Hurtado v. Bondi*, No. 26-CV-546, 2026 WL 184884, at *6 (D. Minn. Jan. 24, 2026); *Marinero v. Bondi*, No. 0:26-CV-1007, 2026 WL 357653, at *2 (D. Minn. Feb. 9, 2026). In another case,

---

[2] The undersigned has decided cases of this kind in this district and as a visiting judge in the District of Minnesota, and will cite them interchangeably.

the Court ordered immediate release where the petitioner had been redetained following his appearance at a scheduled appointment with the government, and there was no explanation for why he had been redetained before his scheduled May 1, 2026 asylum hearing. *Duarte Salazar v. Noem*, No. 26-CV-1040, 2026 WL 381889, at *2 (D. Minn. Feb. 11, 2026).

The record for the petitioner, particularly in the First Case, was not as complete. While he had been released on recognizance, there was nothing about the progression of his pending immigration proceedings after the immigration court's April 23, 2025 order—whether a hearing had been scheduled or held, whether the petitioner had filed additional documents in response to the immigration court's finding of removability, or anything else that might have provided the Court with more information about the petitioner's status at the time of his redetention. Given that, the Court concluded that ordering a bond hearing was the appropriate remedy.

The petitioner hasn't persuaded the Court that was incorrect at the time. But more of a problem is that even if it was, the petitioner hasn't persuaded the Court that any of the due process or administrative procedure issues he identified haven't been cured by the bond hearing that was held. Generally speaking, an unlawful warrantless arrest isn't a get-out-of-jail-free card if a lawful basis to detain someone is subsequently established. *Cf. Mastrian v. McManus*, 554 F.2d 813, 820 (8th Cir. 1977); *McDonald v. Arkansas*, 501 F.2d 385, 388 (8th Cir. 1974). The Supreme Court has explained, in the context of a habeas challenge to immigration detention, that

> [i]rregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law. A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the

> prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.

*U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (quotations omitted).

In this case, the operative petition contains assertion after assertion about the illegality of an initial warrantless detention, the unlawfulness of mandatory detention, the requirement of a bond hearing, and the need for that bond hearing to provide an individualized determination regarding the petitioner's dangerousness and flight risk. Filing 1 at 5-7. The solution to all of that was a statutory bond hearing.

### THE BOND HEARING

But the petitioner also takes issue with the bond hearing itself. He argues that the immigration court denied him due process by requiring him to prove that he wasn't dangerous or a flight risk, as opposed to placing the burden on the government to prove by clear and convincing evidence that he was. Filing 1 at 8- The Court is not persuaded that due process requires the government to bear the burden of proof on that issue at this stage. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018).[3]

---

[3] The petitioner cites *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 688 (W.D. Tex. 2025), for the proposition that "[T]he vast majority—an 'overwhelming consensus'—of courts granting immigration detainees' habeas petitions have placed the burden on the Government. . . ." (Brackets in original). Filing 1 at 8. The use of brackets in the quoted material allowed the petitioner to avoid including the words "Yet, as of 2020. . . ." *Lopez-Arevelo*, 801 F. Supp. at 688 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020)).

The Court notes that the precedent relied upon by the *Lopez-Arevelo* court—the Second Circuit's decision in *Velasco Lopez*—addressed "a due process challenge not to his initial detention but to the procedures that resulted in his prolonged incarceration without a

The petitioner also advances what can best be described as a wholesale indictment of the immigration court system. *See* filing 1 at 12-17. He argues generally that immigration judges are no longer neutral decision-makers as a result of political influence. *See id.*

The Court assumes, without deciding, that such an argument can be raised in a habeas proceeding. The petitioner's arguments fall short regardless. The Court cannot assume, based on the bureaucratic structure of the immigration courts, that they're inherently biased. *Cf. United States v. Benitez-Villafuerte*, 186 F.3d 651, 659-60 (5th Cir. 1999) (citing *Marcello v. Bonds*, 349 U.S. 302 (1955)). And the petitioner has pointed to nothing about the bond hearing in this case—indeed, hasn't even alleged anything about the bond hearing in this case, aside from the result—suggesting that the immigration judge's decision wasn't made on the merits.[4] Nor does the Court's

---

determination that he poses a heightened bail risk." 978 F.3d at 850. At this point, the weight of circuit-level precedent appears to permit the burden to be assigned to the detainee at a § 1226(a) bond hearing (although this "disjointed body of caselaw" has been described as more of a "circuit splat" than a "circuit split"). *See Black v. Almodovar*, 156 F.4th 171, 173 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc) (collecting cases).

[4] The petitioner claims that immigration judges are regularly and unfairly finding "flight risk" more in recent cases, particularly after habeas petitions have been granted, and alleges that "[i]n communication with the immigration bar that practices in the Omaha Immigration Court, the undersigned attorneys are aware of only two granted bonds, with the rest being findings of flight risk." Filing 1 at 16. The petitioner asks the Court to order the government to disclose how often immigration judges are granting bonds as opposed to finding flight risk, and disclose similar data from before July 2025 for comparison. *Id.*

The Court declines to use the petitioner's habeas petition as a vehicle for an institutional investigation of the Omaha Immigration Court. The Court also notes that whomever it was the petitioner's counsel has communicated with, they might want to ask around more. The Court has now ordered bond hearings in a number of cases—well more than two—and the petitioner has, so far, been the only detainee *denied* bond.

8

review of the immigration judge's decision, filing 1-1 at 42-46, suggest anything other than an straightforward application of the relevant factors.

## CONCLUSION

To summarize: The petitioner prayed for either a bond hearing or release, and the Court elected to order a bond hearing. A bond hearing was held. Nothing in the petitioner's operative petition is sufficient to suggest that he wasn't afforded due process by the hearing he received. Accordingly,

IT IS ORDERED

1. The petition for habeas corpus (filing 1) is denied.

2. A separate judgment will be entered.

Dated this 18th day of February, 2026.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
Senior United States District Judge